Battle, J.
This case adds one more to the many, which have recently been before the Court, in which the plaintiff has sought by parol proof, to convert a deed absolute on its face, into a trust or security for money, upon the allegation that the clause of the declaration of trust or redemption, was omitted by reason of ignorance, mistake, fraud or undue advantage. The principles upon which relief is given, and the kind and amount of testimony which is 'required in such cases, are attempted tobe fully set forth, and explained in Clement v. Clement, decided at this Term, (ante 111,) and need not be again repeated. Before proceeding to the enquiry whether the plaintiff has supported his allegations, by the necessary proof, it is proper that we should dispose of the objection urged by the defendants against the bill, for the want of parties. It is contended that ás a part of the trust, which the plaintiff’s charges was intended to have been inserted in the deeds to the defendant, Pigford, and omitted by means of his fraudulent contrivance was for the two daughters of the plaintiff, they *200 and their husbands ought to have been made parties, and that the bill cannot be sustained without them.
The objection raises the question, whether the plaintiffs daughters have such an interest in the land and slaves, by reason of the trust which he intended to declare for them, as can give them any right in their father’s lifetime to enforce it in Equity? Our opinion is, that they have not. It is a well settled rule in Equity, that a contract will not be specifically enforced if it be not founded on a valuable consideration. Adams Eq. 78, Woodall v. Prevatt, Busb. Eq. Rep. 199. Here was no contract between the defendant and the plaintiff’s daughters, and no consideration moving between them. As between the daughters and their father, there was indeed a meritorious consideration, but as his intended bounty to them was imperfectly executed, it could not be enforced against him in his lifetime, though it might be, if his intention remained' unaltered at his death, against any person claiming by operation of law without an equally meritorious claim : Adams Eq. 97. — Garner v. Garner, Busb. Eq. Rep. 1. The father’s title to the land and slaves conveyed to the defendant, so far as his daughters are concerned, remained therefore, unaffected by his intended disposition of them, in their favour, and he alone is entitled to call upon the defendant to execute the alleged trust. The daughters and their husbands have no direct and certain interest in the subject matter of the suit; nor Indeed, any other interest, except the possibility of succeeding to the estate of the father, as his heirs at law and next of kin, and of course, they would be improper parties -to the suit. If this view of the case be correct, and we think it is, it disposes also of the objection to the competency of these persons as witnesses for the plaintiff. It is not pretended but that children may be witnesses for their father, though they may ultimately be benefitted by the decision of the suit in his favor. Their relation to him may affect their credibility but not their competency.
*201 We are prepared now to enter upon the examination of the testimony taken upon the issues made by the pleadings. The main issue, and that upon which the ease must principally turn, is whether the deeds executed by the plaintiff to the" defendant Pigford, were intended to be what they purport on their face, absolute deeds conveying, for a full and fair price paid to the plaintiff, the land and slaves therein mentioned, to the said defendant for his own use unaffected by the trusts set forth in the bill % The burden of proof is on the plaintiff, and wc have seen that he must show not merely declarations of the defendant acknowledging the trusts, but facts and circumstances dehors the deed inconsistent with the idea of an absolute purchase for himself. Before looking to the plaintiff’s proofs it is proper to remark that the statements of the answer in relation to the payment of the purchase money, are not so full, explicit and circumstantial as the case required. They deal so much in generalities as to give that part of the answer, the character of evasiveness, and thereby to induce a suspicion of its candor and truthfulness. But if it were otherwise, the plaintiffs testimony has fairly met, and completely overthrown it. That the plaintiff was an illiterate, simple minded man, and one easily imposed upon, by those in whom he had confidence, is clearly proved by many witnesses. That the defendant, Pigford, held the land and slaves mentioned in the deed, in some way for the use and benefit of the plaintiff and Ids daughters, he more than once acknowledged to John Watkins, and others. But throwing this testimony aside, and counting for nothing, too, the long period during which the defendant permitted the plaintiff and his infant daughters to live at Ids house, and furnished them with board and other necessaries, all of which was in accordance with the alleged trust, wc have abundant proof from the acts of the defendant, to show that he did not hold the property absolutely as ids own, bat upon the trusts alleged by the plaintiff. Upon the marriage of the daughters he gave to each of them four of *202 the slaves and their increase, which be had obtained from the plaintiff. This is admitted by the defendant; but he alleges that they were mere gifts — pure gratuities induced by no legal, moral, or any other consideration than good will and benevolence toward the parties, who were necies of his wife, and inmates of his family. That may be so, but it is so contrary to our experience of the ordinary course of human conduct, that we hesitate to believe it; unless we find it corroborated by something more than the defendant’s assertions. Do we find any such corroborative testimony ? Not so; on the contrary we find a circumstance connected with the execution of the deed of gift for the four slaves from the defendant, Pigford, to the wife of John "Watkins, deposed to by the said Watkins and John Gideons, which is consistent enough with the idea of a transaction founded upon a valuable consideration, or the performance of a duty, totally at variance with that of a gift or voluntary bounty. The circumstance is thus stated by Gideons who was one of the subscribing witnesses:
“ I was present and witnessed such with Hugh Sharpless— Mir. Pigford presented a receipt to Mr. Watkins to sign, which Watkins refused to sign. Pigford then asked him what he would do, and he said he would sign a receipt that he had received these four negroes. Mr. Pigford told him to sign that receipt, and not to come back there after any more property. Mr. Watkins then signed it. This was the second receipt as prepared.” The account of the transaction given by Watkins himself is much more full and circumstantial, stating among other things, that the receipt which he refused to sign, expressed that his wife, “should never expect to receive any more of Hugh Lamb’s property.” The enquiry occurs at once to every mind, why, if the gift of the slaves was free and voluntary, take a receipt at all ? Why permit the donee to hig-gle about the receipt ? Surely the records of benevolence might be searched in vain for such another instance of impertinence on the part of a donee, and forbearance on that of *203 the donor! Strange as this conduct of the defendant Pigford may appear, we might perhaps believe it, were it consistent with other parts of his conduct as deposed to hy some of the other witnesses, whose character is stated by his own witness, John D. Powers, to he good. When the plaintiff or his agent, for that purpose, Thomas H. Tate, demanded the property in question of the defendant, he was rude, and according to the statement of Edward Pittman, vulgar and insulting. He denied the right of the plaintiff, and then insisted that the plaintiff owed him an account of $1500, according to one witness, and $2500 according to another; and, yet, though requested to do so, he never produced any account, nor proves any part of it; nor indeed the payment of the purchase money for the land and slaves, except by his son James B. Pigford. And the credibility of this witness, though his character is proved to be good, is much impaired by the fact, that a part of his testimony, to wit: that relating to the demand, is directly contradicted by the testimony of four others, whose character is also proved to be good. Without adverting to every minute circumstance appearing in the proofs, we feel ourselves bound to declare that the transfers of the eight slaves to the daughters of the plaintiff upon their respective marriages, and the circumstances which attended them, particularly that made to Mrs.' Watkins, are not shown by the defendant Pigford to have been pure gifts, and are therefore inconsistent with the idea that he purchased the slaves of the.plaintiff at a full and fair price Iona fide and absolutely for himself. We feel bound to declare further, that the trusts alledged by the plaintiff were assumed by the defendant Pigford, but were omitted in the deed by the fraud and imposition of the said defendant. The pretended purchase of the land was made of the same time, and formed a part of the same transaction with that of the. slaves, and was, in our opinion, agreed to be taken upon the same trusts. We are satisfied from the testimony of John Watkins, taken in connection with the fact, that the defendant Isaac Lamb, had *204 taken similar conveyances from Ms brother, the plaintiff, upon similar trusts, that he very well knew the character of the deeds from his brother, to his co-defendant and brother-in-law, Pigford. The plaintiff is entitled to a decree declaring that the defendants hold the property mentioned in the pleadings (except such of the slaves as have been conveyed to his , daughters,) in trust for the plaintiff, and also that they shall account to him for the rent, hires and profits of such land and slaves. In taking the account the defendant will be allowed for all proper expenditures for the board, &c., of the plaintiff and his two daughters.